# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNIE LEE SMITH | ) | |
| Plaintiff, | ) ) ) | Civil Action No. 13-700 |
| v. | ) ) | Chief Magistrate Judge Lenihan |
| FIRST NAME UNKNOWN KETCHUM, Former Barbershop Instructor, in his Individual and official capacity, | ) ) ) ) | ECF No. 32 |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Presently before the Court is Defendant's Motion to Dismiss for Failure to State a Claim. For the reasons discussed below, the Motion will be granted.

A. <u>Facts and Procedural Background</u>

Plaintiff Johnnie Lee Smith ("Plaintiff" or "Smith") filed the above-captioned Complaint in the United States District Court for the Middle District of Pennsylvania against Defendants the Pennsylvania Department of Corrections ("DOC"), and the former barbershop instructor at SCI-Greene, First Name Unknown Ketchum ("Defendant Ketchum"), in his individual and official capacities. (ECF No. 1.) United States District Judge John E. Jones III dismissed the action against the DOC on the basis of Eleventh Amendment Immunity.[1] (ECF No. 8.) District Judge Jones further ordered that the matter be transferred to the United States District Court for the

---

[1] Likewise, all claims against the individual Defendant Ketchum in his official capacity are dismissed because a claim against a state official in his or her official capacity "is no different from a suit against the State itself." *Will v. Michigan*, 491 U.S. 58, 71 (1989).

Western District of Pennsylvania because the cause of action arose at SCI-Greene, which is located in the Western District. (ECF No. 8.)

Defendant Ketchum filed this Motion to Dismiss on December 18, 2013. (ECF No. 32.) The Court ordered Plaintiff to file a Response by January 10, 2014. On January 8, 2014, Plaintiff filed a Motion to Proceed with the Instant Civil Action (ECF No. 34), and a Motion for 2nd Amendment of Civil Complaint (ECF No. 35). On January 8, 2014, due to the content of the motion, the Court ordered that the Motion to Proceed at ECF No. 34 would be construed as Plaintiff's Response to Defendant Ketchum's Motion to Dismiss. Further, the Court granted Plaintiff's Motion to Amend at ECF No. 35 as it related to Plaintiff's efforts to increase the amount of compensatory and punitive damages he seeks. Finally, on February 27, 2014, Plaintiff filed a Motion to Compel Defendants to Produce Plaintiff's Missing Box of Legal Materials. (ECF No. 37.) On February 28, 2014, this Court denied Plaintiff's Motion to Compel, indicating the following: "This issue was raised previously and addressed by the court at a conference on November 20, 2013. ECF No. 28. Defendant DOC was instructed to try to locate the alleged missing box and was unable to do so. ECF No. 29. This issue is closed." (Feb. 28, 2014 text order.)[2]

As noted by this Court on December 11, 2013, ECF Nos. 30 and 31 will be read together to comprise Plaintiff's Amended Complaint[3], except as noted above regarding Plaintiff's Second Amended Complaint requesting an increase in the amount of compensatory and punitive damages.

---

[2] The Court held a telephone conference on November 20, 2013, at which time it instructed counsel to investigate as set forth in the Court's text order at ECF No. 28. Counsel investigated and filed a statement regarding those efforts at ECF No. 29.

[3] In light of Plaintiff's pro se status, the Court also considers the Complaint at ECF No. 1 that is attached to ECF No. 30. In addition, the Court considers the grievance documents attached to ECF No. 1. "The court may consider the indisputably authentic documents related to plaintiff's grievances on a motion to dismiss without converting it to a motion for summary judgment." *Walker v. James*, Civil Action No. 03-3541, 2007 WL 210404, at *4 (E.D. Pa. Jan. 23, 2007) (citing *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004)).

Plaintiff avers that he is a skilled barber and holds a license in Barber Management. (ECF No. 1 at ¶ 8.) On September 6, 2011, he was assigned to the barbershop at SCI Greene. Plaintiff alleges that he was told by Defendant Ketchum that he would not be compensated the maximum pay as required by DOC policy, but would be compensated at the beginners rate of pay. (ECF No. 1 at ¶ 9.) Plaintiff avers that he told Defendant Ketchum that he was entitled to the maximum rate, at which time Defendant Ketchum told Plaintiff to leave his office and return to his work area. (ECF No. 1 at ¶ 10.)

Following this exchange, Plaintiff spoke with other inmates who worked in the barbershop about their skill level and rate of pay. (ECF No. 11.) Plaintiff discovered that other skilled and licensed barbers working in the barbershop were not making the maximum pay rate. (ECF No. 1 at ¶ 12.) Plaintiff then approached Defendant Ketchum again to inform him of the DOC's pay policy and that he and others were not being properly compensated. Plaintiff also asked Defendant Ketchum why he and others were not being paid the maximum rate for skilled and licensed barbers. (ECF No. 1 at ¶ 12.)

Plaintiff avers that he constantly pursued the issue, and "was labeled as being disruptive and having ongoing problems with other inmates within the barbershop by the [D]efendant Ketchum." (ECF No. 1 at ¶ 13.) Plaintiff concludes that "as a result of Plaintiff being very verbal about the violation of the Department of Corrections policy by [D]efendant Ketchum, Plaintiff was suspended from work by [D]efendant Ketchum on September 22, 2011, pending a staffing for job removal." (ECF No. 1 at ¶14.) Plaintiff states that had he not continued to pursue the issue, Defendant Ketchum would not have suspended him or requested a staffing for job removal. (ECF No. 1 at ¶16.)

Plaintiff avers that Defendant Ketchum's actions in suspending Plaintiff and recommending his job removal was in retaliation for Plaintiff's exercising his First Amendment right to free speech. (ECF No. 1 at ¶ 19.)

Plaintiff attempts to make out a claim for violation of his Fourteenth Amendment procedural due process rights for failure to provide Plaintiff with his legal materials that he had in his possession before his "questionable and abnormal" transfer to SCI Pittsburgh on August 23, 2013. (ECF No. 30 at 2, ¶ 2.)

Relatedly, Plaintiff also appears to allege an access to the courts claim in that he has not been able to "fight and pursue this civil action against the [D]efendant Ketchum in the most thorough manner available to the Plaintiff, therefore violating his right to due process." (ECF No. 30 at 3, ¶ 7.)

Finally, Plaintiff appears to allege a conspiracy claim in light of his "questionable and abnormal" transfer to SCI Pittsburgh on August 23, 2013. Plaintiff avers that "there was a layered conspiracy between SCI Greene and SCI Pittsburgh, simply because of the underlying circumstances of his secret & unusual transfer from Greene to Pittsburgh." (ECF No. 31 at 2, ¶ 5.) Plaintiff notes that he was transferred by himself in a DOC van in the middle of the afternoon, he was not permitted to assist in the packing of his property at SCI Greene, and he did not have his property properly inventoried at SCI Pittsburgh as required by DOC policy. (ECF No. 31 at 2, ¶ 5.) Plaintiff concludes that he cannot accept that the loss of his documents was inadvertent. (ECF No. 31 at 2, ¶ 6.)

B. Legal Standards

1. PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Complaint because pro se pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should "'apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name.'" *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veterans Affairs*, 165 F.3d 244, 247-48 (3d Cir. 1999)). Finally, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

2. MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); see also *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

Courts generally consider only the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted). Factual allegations within documents described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents. *Id*. A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1426 (3d Cir. 1997).

C. Analysis

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

1. FIRST AMENDMENT RETALIATION

Defendant argues that Plaintiff's First Amendment Retaliation claim must be dismissed because, contrary to Plaintiff's assertions, he was suspended from employment because of continuing problems with other inmate-employees and staff. Defendant has attached the DOC policy concerning inmate compensation for 2011 demonstrating that Plaintiff was receiving the maximum hourly rate for a barber worker with Plaintiff's credentials ($.42 per hour). (ECF No. 33-1 at 3.) Further, the grievance documents attached to Plaintiff's Complaint at ECF No. 1 show that in accordance with DOC policy and procedures, a job removal staffing was held on October 18, 2011 after Plaintiff was suspended from his employment. Plaintiff continued to receive his full hourly wages from the barbershop until that time. The unit team voted. Plaintiff was removed from the barbershop, and began receiving money from the General Labor Pool ("GLP") until a work assignment could be found for him ($.72 per day, five days per week). Plaintiff was informed that he could be re-evaluated for the barbershop at a future time. (ECF No. 1 at 8.)

In order to state a claim for retaliation, Plaintiff must aver the following: 1) the conduct leading to the alleged retaliation was constitutionally protected; 2) that he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and 3) that his protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The *Rauser* Court emphasized that after a plaintiff establishes these three elements, the burden shifts to the defendant to prove by a preponderance of the evidence that defendant would have taken the same disciplinary action even in the absence of plaintiff's protected activity. *Id.* (citing and applying to the prison context the burden-shifting analysis in *Mount Healthy Bd. of Ed. v. Doyle*, 429 U.S.

7

274, 287 (1977)). In adopting the *Mount Healthy* burden-shifting framework into the prison context, the United States Court of Appeals for the Third Circuit noted as follows:

> We recognize that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise. In *Turner v. Safley*, 482 U.S. 78, 89 (1987), the Supreme Court held that a prison regulation that impinges on the constitutional rights of an inmate is valid if it is "reasonably related to legitimate penological interests." In adopting the *Mount Healthy* framework, we do not discard the deferential standard articulated in *Turner*. Rather, we incorporate the balancing test announced in *Turner* into the *Mount Healthy* burden-shifting framework. This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest.

*Rauser*, 241 F.3d at 334.

Assuming that Plaintiff's verbal inquiries concerning his rate of pay are protected activity and that he has established the second two elements of the test set forth in *Rauser*, Defendant has directed this Court to the grievance documents submitted by Plaintiff as an attachment to his original Complaint at ECF No. 1. The grievance documents clearly show a legitimate penological interest in suspending Plaintiff from his barbershop position. That is, the grievance documents reflect that "[d]ocumentation does not support that inmate was arbitrarily and capriciously removed, but was removed for documented problems while working in the Barber shop." (ECF No. 1 at 8.) Likewise, in the Facility Manager's Appeal Response attached to the Complaint, the Plaintiff was informed that he was "removed from [the] Barbershop due to ongoing problems with other inmates and staff." (ECF No. 1 at 10.) Likewise, in the Final Appeal Decision, Plaintiff was informed of the same, that he presented no evidence of staff misconduct or discrimination, but that he was removed due to his "own acts and behavior."

(ECF No. 1 at 12.) Clearly the prison has a legitimate penological interest in maintaining order in the prison.

Similarly, Plaintiff's Complaint suggests the disruptive behavior reflected in the grievance documents. Specifically, Plaintiff avers that he was in "constant pursuit" of his maximum pay (ECF No. 1 at ¶ 13), that he was "being very verbal about the [wage] violation (ECF No. 1 at ¶ 14), and that he was in "continuous pursuit" of his maximum pay (ECF No. 1 at ¶ 15).

Consequently, the Court must grant Defendant's Motion to Dismiss the retaliation claim because documentation properly considered by this Court on a Motion to Dismiss reflects the Defendant's legitimate penological interest supporting the decision to suspend Plaintiff. That is, Defendant would have taken the same action in the absence of Plaintiff's alleged protected activity because Plaintiff was being disruptive in the prison environment. Any attempt to amend would be futile.[4]

2. FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

Defendant argues that Plaintiff's Fourteenth Amendment claim must be dismissed because the grievance procedure at the prison did provide, and continues to provide, an adequate post-deprivation remedy for purposes of the Fourteenth Amendment Due Process Clause.

As noted by defendant, Plaintiff's Fourteenth Amendment procedural due process claim fails because the State provides an adequate postdeprivation remedy. *Zinermon v. Burch*, 494 U.S. 113, 115 (1990) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517 (1984)). That is,

---

[4] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

"where the State cannot predict and guard in advance against a deprivation, a postdeprivation tort remedy is all the process the State can be expected to provide, and is constitutionally sufficient." *Zinermon*, 494 U.S. at 115. Here, Plaintiff may file a state court action for conversion for any unlawful taking of his documents. In addition, the United States Court of Appeals has found that adequate post-deprivation remedies also include the use of the prison's grievance process. *Tapp v. Proto*, 404 F. App'x 563, 567 (3d Cir. 2010); *Tillman v. Lebanon Cnty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000). Either of these remedies will satisfy due process, even if an inmate is dissatisfied with the result. *Mearin v. Folino*, Civil Action No. 11-571, 2013 WL 5332120, at *7 (W.D. Pa. Sept. 23, 2013) (citing *Iseley v. Horn*, No. Civ. A. 95-5389, 1996 WL 510090, at *6 (E.D. Pa. Sept. 3, 1996); *Pettaway v. SCI Albion*, C.A. No. 11-158 Erie, 2012 WL 366782, at *3-4 (W.D. Pa. Feb. 2, 2012)).

Hence, the Complaint fails to state a claim for violation of Plaintiff's Fourteenth Amendment procedural due process rights. Any attempt to amend would be futile as a matter of law.

### 3. ACCESS TO THE COURTS

Although not argued by Defendant, Plaintiff's submissions to the Court suggest that he is also attempting to make out a claim for interference with access to the courts. Plaintiff avers that because the box containing his legal papers has been lost, he is unable to "fight & pursue this civil action against the defendant Ketchum in the most thorough manner available to the Plaintiff." (ECF No. 30 at ¶ 7.)

Prisoners do have a fundamental right to access the courts. *Lewis v. Casey*, 518 U.S. 343 (1996). A prisoner attempting to make out a claim for interference with access to the courts, however, must aver that that the denial of access caused actual injury. *Id.* at 352-53. Actual

injury occurs when a prisoner demonstrates that a nonfrivolous and arguable claim was lost because of the denial of access to the courts. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Here, Plaintiff alleged only that he was not able to pursue his claim as "thoroughly" without his box of documents. He has not alleged that he cannot pursue his retaliation claim, or will lose his retaliation claim, without the documents. Moreover, Plaintiff's retaliation claim, as noted above, must be dismissed because Defendant has shown, as reflected in the response to Plaintiff's grievance, that Plaintiff would have been suspended from his job even in the absence of Plaintiff raising questions about compensation practices for the barbershop.

Hence, any attempt to state a claim for interference to access to the courts must fail as a matter of law. Any attempt to amend will be futile.

      4. CONSPIRACY

Although not argued by Defendant, Plaintiff appears to allege a conspiracy between SCI Greene and SCI Pittsburgh to deprive him of his legal materials.

In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words,

'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds. Instead, Plaintiff avers that he cannot accept the fact that the documents were just simply lost. Plaintiff does not identify the actors involved in the conspiracy, nor does he name them as defendants. Plaintiff's allegations do not contain enough factual matter "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *See Twombly*, 550 U.S. at 556. Hence, any attempt to state a conspiracy claim must fail and will be dismissed with prejudice. Further, any attempt to amend would be futile as a matter of law.

D. <u>Conclusion</u>

For the reasons discussed above, the Court will grant Defendant's Motion to Dismiss. An appropriate order will follow.

Dated: August 15, 2014    BY THE COURT:

<u>s/Lisa Pupo Lenihan</u>
LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:   All Counsel of Record
      Via Electronic Mail

      Johnnie Lee Smith
      AC-8935
      SCI Pittsburgh
      P.O. Box 99991
      Pittsburgh, PA  15233